**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-03295-DOC-DMK                    Date: June 17, 2026

Title: Luis Perez Rios v. Fereti Semaia et al

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING TEMPORARY RESTRAINING ORDER [7]**

On June 15, 2026, Petitioner Luis Perez Rios ("Petitioner") filed a petition for a writ of habeas corpus pursuant ("Petition"), challenging the lawfulness of his detention by U.S. Immigration and Customs Enforcement ("ICE"). ("Pet") (Dkt. 1). On June 16, 2026, Petitioner also filed an ex parte application for a temporary restraining order pursuant to Fed. R. Civ. P. 65(d). ("App") (Dkt. 7). For the reasons stated below, the Application is **GRANTED**.

I.   **Background**

A.   **Facts**

Petitioner seeks to preserve his release on an order of his own recognizance and alleges the following:

Petitioner is forty-eight years old and currently in ICE custody. Pet. at 1. He arrived in the United states in 1996 and is the father of two United States citizen children. *Id*. His immediate family, including his father and two sisters, are also United States citizens. *Id.*

On February 28, 2017 Petitioner was issued a custody decision by Immigration Judge Kevin W. *Id.* at 3. Riley which authorized Petitioner's release from DHS custody

under a $4,500 bond which Petitioner posted. Petitioner's release on bond was based on the determination that Petitioner was neither a danger nor a flight risk. *Id.* Petitioner was then placed on an Order of Release on Own Recognize, Form I-220A. *Id.* For almost a decade, Petitioner has lived in his community and committed no new offenses.

Around June 6, 2026 Petitioner was arrested on his way to work in San Bernadino and then transferred to Adelanto. *Id*. at 4. Petitioner was not provided a warrant for his arrest, not given a pre-deprivation hearing and there is no indication he was told of any changed circumstances leading to his arrest. App. at 2.

Petitioner's criminal history consists of a conviction for misdemeanor petty theft in 2001, driving under the influence misdemeanor in 2007, and driving without a license in 2014. Pet. at 3.

## II.    Legal Standard

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co*., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

## III.    Discussion

Having reviewed the authority provided by the Petitioner, the Court **GRANTS** Petitioner's release from custody.

## A.  Petitioner has established a likelihood of success on the merits.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those without lawful status. *Zadyvadas v. Davis*, 533 U.S. 678, 693-94 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (cleaned up)). "The fundamental requirement of due process is the

opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Here, it appears that Petitioner was released on conditional parole.[1]

Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Specifically, § 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on-
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole[.]

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)").

Courts consistently apply the same procedural due process analysis to petitioners under both forms of parole. The Court in *Pinchi v. Noem* explained the due process rights owed to conditional parolees in a well-reasoned decision:

---

[1] *See* Order Of Release On Recognizance, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (listing section 236 as governing authority).

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).z . . . As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey*, 408 U.S. at 482, 92 S.Ct. 2593. The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. [Petitioner] justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025).

For the same reasons, Petitioner here possessed a protected liberty interest when he was released on conditional parole. *See, e.g.*, *Fernández López v. Wofford*, 2025 WL 2959319, *4-5 (E.D. Cal. 2025) (finding that petitioner released from immigration detention on parole had protected liberty interest in remaining out of custody regardless of whether she was paroled under § 1182(d)(5)(A) or § 1226(a)); *Noori v. Larose*, 2025 WL 2800149, *4, 9-10 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

Because Petitioner has a protected liberty interest, the Court turns to the next step. To determine constitutionally sufficient procedures to protect a liberty interest, courts apply the *Mathews* test. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This test requires courts to balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

Turning to the first factor, Petitioner had a significant liberty interest in remaining out of custody, given the Government's promise through its grant of conditional parole. *See Zadvydas*, 533 U.S. at 690. A liberty interest, such as Petitioner's, is paramount and, should therefore, be protected. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." (cleaned up)).

Under the second factor, the risk of erroneous deprivation is high. The government revoked Petitioner's parole without any apparent opportunity for pre-detention review and opportunity to be heard. The government earlier found Petitioner to be suitable for conditional parole and that he is not a flight risk or danger to the community. Thus, the government's implicit reversal of this determination without any opportunity for pre-detention review makes the opportunity for erroneous deprivation extremely high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. The government has the capability to hold such a hearing and provide the requisite notice. Forcing the government to comply with proper procedures imposes a very low burden. *See Pinchi*, 792 F. Supp. 3d at 1038-39; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Accordingly, the Court joins numerous of its sister courts in finding that Petitioner's detention is unlawful because when the Government re-detained him, it revoked his conditional release in violation of the Due Process Clause. *See e.g.*, *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *4 (S.D. Cal. Dec. 23, 2025); *Pinchi*, 792 F.Supp.3d at 1038; *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) .

## B. Without injunctive relief, Petitioner will likely suffer irreparable harm.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Indeed, "unlawful detention certainly constitutes extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872

F.3d 976, 999 (9th Cir. 2017). Petitioner has shown evidence that he has been deprived of due process regarding his detention, so this factor tilts in his favor.

**C.  The balance of hardships and public interest is in Petitioner's favor.**

The last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Respondents argue they have a "compelling interest in the steady enforcement of its immigration laws."  Opp. 13.  Nonetheless, the Court finds that the balance of equities and public interest factors favors Petitioner. Given that injunctive relief is only the bare minimum required under § 1226, the Court finds the harm to Respondents is minimal.  See *Rodriguez*, 715 F.3d at 1145 (finding the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns").  Furthermore, "it is always in the public interest to prevent the violation of a party's constitutional rights, . . . because all citizens have a stake in upholding the Constitution."  *Doe v. Horne*, 115 F.4th 1083, 1098–99 (9th Cir. 2024) (citation modified).  For these reasons, the Court concludes that the balance of hardships and public interest tips sharply in favor of Petitioner.

**D. Bond Requirement**

Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

**IV.    Disposition**

For the above reasons, the Court **GRANTS** Petitioner's Application. Respondents are **ORDERED** to release Petitioner from custody immediately under no more stringent conditions of release than the original Release on Recognizance. Furthermore, Respondents are **ENJOINED** from re-detaining Petitioner until he is first provided a pre-deprivation hearing.

This TRO will expire on July 1, 2026. Should the parties wish to submit briefing, Respondents must file any brief arguing why a preliminary injunction should not issue no later than June 24, 2026, and Petitioner must file any opposing brief no later than July 1, 2026.  The court shall after reviewing the parties' papers take the Preliminary Injunction Application under submission.

MINUTES FORM 11                                     Initials of Deputy Clerk: kdu

CIVIL-GEN